

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-10-2006

# Griffith v. Mellon Bank NA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3543

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Griffith v. Mellon Bank NA" (2006). *2006 Decisions.* Paper 1460.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1460

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3543

———————

KIM GRIFFITH,

Appellant.

v.

MELLON BANK, N.A.,

Appellee

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-08944)
District Judge: Honorable Eduardo C. Robreno

———————

Argued on September 22, 2005

Before: ROTH, MCKEE and FISHER, Circuit Judges

(Opinion filed March 10, 2006)

Sally J. Daugherty, Esquire (ARGUED)
Salmon, Ricchezza, Singer & Turchi
1700 Market Street, Suite 3110
Philadelphia, PA 19107

    Counsel for Appellant

Aaron Krauss, Esquire (ARGUED)
Patrick J. O'Connor, Esquire
Cozen & O'Connor
1900 Market Street
The Atrium
Philadelphia, PA 19103

Counsel for Appellees

————————

O P I N I O N

————————

**ROTH**, <u>Circuit Judge</u>:

This case is an appeal from the District Court's grant of summary judgment against

plaintiff, Kim Griffith, in a suit alleging breach of contract and conversion against

defendant, Mellon Bank, N.A., for its failure to honor a certificate of deposit. For the

reasons stated below, we will affirm the decision of the District Court.

**I.      Factual Background and Procedural History**

As the facts are well known to the parties, we give only a brief description of the

issues and procedural posture of the case.

Sometime in January of 2001, plaintiff discovered a certificate of deposit

purportedly[1] issued by Mellon Bank, N.A., in the amount of $530,000 which had matured

on August 4, 1975. The certificate was unexpectedly discovered in one of several books

————————

[1] The actual identity of the issuer is in dispute and was not decided by the District
Court.

Griffith had purchased from an unnamed individual. Griffith had not given value for the certificate itself. On its face, the certificate had not been marked paid. After discussions with Mellon concerning the instrument's validity, Griffith filed suit based on the bank's failure to honor the certificate and demanded nearly $2.5 million in principal and interest.

Both parties moved for summary judgment on Griffith's breach of contract and conversion claims. Mellon raised the defense that the certificate had been paid. The District Court found that Griffith was not a holder in due course because he did not take the certificate for value; Griffith paid only for the books in which the certificate was discovered. Griffith does not contest this factual finding. Since Griffith is a mere holder, rather than a holder in due course, Mellon's argument that the certificate has been paid is a complete defense. 13 PA. CONS. STAT. § 3602 (a) ("an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged"). The District Court applied an evidentiary presumption of payment based on the over twenty year lapse between maturity and demand. Next, the District Court found that Griffith failed to overcome this presumption. The District Court granted Mellon's motion for summary judgment and this appeal followed.

Griffith now appeals the District Court's application of the presumption of payment to a certificate of deposit. In the alternative, Griffith argues that he overcame the presumption. In the context of overcoming the presumption, Griffith claims that he

3

was entitled to numerous adverse inferences against Mellon based on the bank's alleged spoilation of evidence. Specifically, Mellon argues that he is entitled to a spoilation inference based on eight missing pages from the beginning of a 1987 conversion report issued by Mellon which lists outstanding certificates of deposit; missing information in the files of Mellon's Assistant Vice President, Bonnie Parks, who investigated Griffith's claim; and missing documents which allowed Mellon's in-house counsel, Mr. Marquis, to testify that the certificate of deposit was issued by the bank's capital markets division.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, and the matter involves citizens of different states. We have appellate jurisdiction under 28 U.S.C. § 1291.

Our review of the District Court's interpretations of Pennsylvania's Uniform Commercial Code (UCC) is de novo. Buczek v. Cont'l Cas. Ins. Co., 378 F.3d 284, 289 n.2 (3d Cir. 2004). Also, our review of the grant of summary judgment is plenary. Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995). To grant summary judgment, the District Court must find that there is no genuine issue of material fact. FED. R. CIV. P. 56(C). The District Court must view the facts in the light most favorable to the nonmoving party and must make all reasonable inferences in that party's favor. Marzano v. Computer Sci. Corp., 91 F.3d 497, 501 (3d Cir. 1996). Although entitled to all reasonable inferences, the nonmoving party must present more

4

than a scintilla of evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

III.  **Discussion**

A certificate of deposit consists of an acknowledgment by a bank that a sum of money has been received with a promise to repay.  13 PA. CONS. STAT. §  3104(J).  Thus, a certificate of deposit is a debt.  Pennsylvania has an evidentiary presumption that after the lapse of twenty years all debts are presumed to have been paid.  Rosenbaum v. Newhoff, 152 A.2d 763, 765 (Pa. 1959).  This common-law presumption is "unbending, universal and invariable."  Finnegan v. Pennsylvania Higher Educ. Assistance Agency, 690 A.2d 1282, 1284 n.3 (Pa. Commw. Ct. 1997) (quoting Carter v. Ridge Turnpike Co., 57 A. 988 (Pa. 1904)).

No case directly applies the presumption to a certificate of deposit.  We conclude that this is due to the rarity of keeping a matured certificate for twenty years. Nonetheless, the Superior Court of Pennsylvania's actions in Flanagan v. Fidelity Bank are illuminating.  652 A.2d 930 (Pa. Super Ct. 1995).  In Flanagan, the Superior Court applied the presumption to a certificate of deposit before realizing that the debt was, in fact, less than twenty years old.  Id. at 931 n.2.

Griffith's argument that the UCC's statute of limitations precludes the application of the evidentiary burden is unpersuasive.  According to the UCC, an action to enforce a certificate of deposit must be commenced within six years after demand for payment is made.  13 PA. CONS. STAT. §  3118(e).  The Supreme Court of Pennsylvania distinguished

the evidentiary presumption from the statute of limitations when it held that the "presumption which the law raises after the lapse of twenty years, that a bond or specialty has been paid, is in its nature <u>essentially different</u> from the bar interposed by the statute of limitations to the recovery of a simple contract debt." <u>Gilmore v. Alexander</u>, 112 A. 9, 11 (Pa. 1920) (emphasis added). Therefore, the common-law presumption still applies. 13 PA. CONS. STAT. § 1103 ("Unless displaced by the particular provisions of this title, the principles of law and equity . . . shall supplement (the UCC's) provisions.").

To overcome the presumption that debts over twenty years old have been satisfied, the holder must prove by clear and convincing evidence that the debt has not been paid. <u>Rosenbaum</u>, 152 A.2d at 766. This can be accomplished in two ways: direct testimony as to nonpayment, or proof of circumstances tending to negative the likelihood of the claim having been satisfied <u>and</u> an explanation for the delay of the creditor in attempting to enforce the debt. <u>Grenet's Estate</u>, 2 A.2d 707, 708 (Pa. 1938) (emphasis added); <u>Oaks Fire Comp. v. Herbert</u>, 132 A.2d 193, 196 (Pa. 1957). An explanation of the creditor's delay in enforcing his claim is required only when no direct evidence of nonpayment is available. <u>Berkshire Land Co. v. Fed. Sec. Co.</u>, 199 F.2d 438, 441 (3d Cir. 1952). The certificate of deposit itself is insufficient to rebut the presumption. <u>See</u> <u>Rosenbaum</u>, 152 A.2d at 766 (noting that the evidence of payment "must consist of proof other than the specialty itself.").

Griffith offers no direct testimony regarding nonpayment. Moreover, Griffith offers no explanation for the twenty-six-year delay in enforcing the debt. An investment

6

explanation is not readily apparent since the certificate did not contain rollover language stating that it would be renewed at the then-prevailing interest rate if not redeemed. In short, the creditor had no reason to hold the certificate past the date of maturity because interest would not accrue under then existing federal law. 12 C.F.R. § 217.3(f) (1975). Therefore, Griffith does not explain the creditor's delay. This alone is fatal to Griffith's claim. Oaks Fire Comp., 132 A.2d at 196.

Also, Griffith's circumstantial evidence supporting nonpayment is insufficient as a matter of law. First, the fact that Griffith possesses an unaltered certificate is insufficient to overcome the presumption. Rosenbaum, 152 A.2d at 766. Second, the fact that the certificate of deposit is not in Mellon's records or in a 1987 conversion report does not defeat summary judgment. Griffith has not negated Mellon's explanation that the records do not exist on account of the lapse of time and Mellon's document retention policy of seven years.[2]

Finally, the District Court was correct in denying adverse inferences against Mellon based on the bank's alleged spoilation of evidence. In determining whether a spoilation inference should be granted, the District Court must examine the following: (1) the degree of fault of the party who altered or destroyed the evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction that

---

[2]It should also be noted that Mellon has presented testimony that all certificates of deposit from the era in question have been paid. See Wyatt v. Mount Airy Cemetery, 224 A.2d 787, 789 (Pa. Super Ct. 1966) ("Evidence sufficient to raise a presumption of payment cannot prevail against positive credible evidence of non-payment.").

will avoid substantial unfairness to the opposing party and serve as a deterrent.  Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).  Griffith has failed to demonstrate that any of the three factors were in his favor.  Therefore, the District Court was correct in denying the adverse spoilation inferences.

## IV.    Conclusion

As Griffith has failed to meet the evidentiary burden which was correctly applied as a matter of Pennsylvania law, we agree with the District Court's conclusions and will affirm the District Court's grant of summary judgment for Mellon.

FISHER, *Circuit Judge*, dissenting.

The primary question in this appeal is not whether there is a difference between the common law presumption of payment and the governing statute of limitations, but rather whether the application of the evidentiary presumption to a bearer certificate of deposit governed by the UCC frustrates the Code's "objectives of negotiability, finality, and uniformity in commercial transactions." *Menichini v. Grant*, 995 F.2d 1224, 1230 (3d Cir. 1993). Because I find that engrafting the evidentiary presumption would hinder the objectives of the UCC, I part ways with the majority and respectfully dissent.

A certificate of deposit is a type of negotiable instrument, defined under the UCC as "an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money." 13 Pa. Cons. Stat. § 3104(j). The particular certificate of deposit at issue in this case is "payable to bearer," which entitles the person in possession to payment. *Id.* § 3109(a)(1). An instrument payable to bearer may be negotiated by delivery alone. *Id.* § 3109 cmt. 1.

Section 3118 of the UCC contains a comprehensive section setting forth the applicable statutes of limitations for all negotiable instruments under Article 3. Regarding the statute of limitations for certificates of deposit, subsection 3118(e) provides as follows:

An action to enforce the obligation of a party to a certificate of deposit to

pay the instrument must be commenced within six years after demand for payment is made to the maker, but, if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.

*Id.* § 3118(e). Under this subsection, the statute of limitations is triggered when a demand for payment is made. Similar to the other provisions of section 3118, the subsection "does not state when a cause of action accrues, but it generally states the time after which a lawsuit may not be filed." 2 James J. White & Robert S. Summers, Uniform Commercial Code § 16-16 (5th ed. 2005).

Section 1103 provides generally that the common law supplements the UCC "[u]nless displaced by the particular provisions of this title[.]"[3] The Superior Court of Pennsylvania has explained that "the UCC does not displace the common law . . . as it affects parties in their commercial dealings *except insofar as reliance on the common law would thwart the purposes of the Code.*" *Hollywood v. First Nat'l Bank of Palmerton*, 859 A.2d 472, 484 (Pa. Super. Ct. 2004) (emphasis added) (quoting *New Jersey Bank N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 345-46 (3d Cir. 1982)). The purposes and policies of the UCC are to simplify, clarify, and modernize the law

---

[3]Section 1103 states as follows:

Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa. Cons. Stat. § 1103.

governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to make uniform the law among the various jurisdictions. 13 Pa. Cons. Stat. § 1102(b). Thus, our focus here must be upon whether the statute of limitations for certificates of deposit set forth in the UCC has displaced the common law evidentiary presumption that debts older than twenty years are deemed paid.

Several decisions from related areas are instructive to my resolution of this issue. In *Menichini v. Grant*, 995 F.2d 1224 (3d Cir. 1993), we concluded that, under Pennsylvania law, the common law discovery rule did not apply to toll the statute of limitations with respect to conversion claims involving negotiable instruments. Following the lead of most courts which had addressed the issue, we stated that applying the discovery rule to negotiable instruments was "inimical to UCC policies of finality and negotiability":

> As tempting a choice as [it] may be in an individual case, we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitations period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and "certainty of liability" advanced.

*Id.* at 1230 (quoting *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 479 (Iowa 1990)).

Similarly, the Superior Court of Pennsylvania in *Hollywood v. First National Bank of Palmerton*, 859 A.2d 472 (Pa. Super. Ct. 2004), agreed with our analysis in *Menichini*

11

and held that "the discovery rule does not apply to toll the statute of limitations for claims of conversion of negotiable instruments." *Id.* at 482 (Pa. Super. Ct. 2004) (quoting *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 624 (Tenn. 2002)). The court concluded that "*[t]he limitations period applies mechanically* and, in the absence of evidence of fraudulent concealment by the defendant, claims not brought within one year are time-barred." *Id.* at 483 (emphasis added). Acknowledging that not applying the discovery rule might be harsh under certain circumstances, the court nonetheless determined that "considerations of negotiability, certainty, and finality" outweighed these factors and that "the need for expedition in commercial transactions is best achieved by safeguarding negotiability and finality of negotiable instruments and assuring uniformity of applicable law across state boundary lines." *Id.* at 482. *See also Gress v. PNC Bank*, 100 F. Supp. 2d 289, 292-93 (E.D. Pa. 2000) (holding that the discovery rule did not toll the statute of limitations set forth in section 3118(g)).

Finally, in *Pagano v. United Jersey Bank*, 670 A.2d 509 (N.J. 1996), the New Jersey Supreme Court determined that the common law evidentiary presumption did not apply to a suit involving a claim for the proceeds of a passbook savings account. Examining the history of the presumption, the court concluded that the presumption was not generally recognized in the banking context, and that "the holder of a savings-account passbook has no reason to take any action [to ensure the account is open] because he or she feels that the deposit is safe." *Id.* at 514. In addition, echoing some of our considerations in *Menichini*, the court stressed that the responsibility to have retained

12

information that the savings account was closed should rest with the bank, which made the "conscious economic decision . . . to shift its resources away from record retention." *Id.*

The principles set forth in the above cases, which should guide our resolution of this dispute, instruct that the common law evidentiary presumption should give way to the UCC. The negotiable instrument at issue is a certificate of deposit payable to bearer, which is freely negotiable and entitles the party in possession to payment. Engrafting the common law evidentiary presumption on the statute of limitations will effectively create a twenty-year statute of repose that focuses on the date that the certificate of deposit was issued by the bank, rather than, as set forth under the statute, the date a demand for payment is made. This rule not only conflicts with the statute, but also creates the practical effect of requiring the holder of a bearer certificate of deposit to prove a negative, i.e., that the holder was never paid on the certificate. Such a rule could impact the free negotiability of the instrument with respect to a subsequent holder-in-due course. In addition, Mellon Bank was the party in the best position to monitor whether its demand certificate of deposit had been paid in order to ensure the "finality" of the transaction. Finally, the consideration that the UCC should be interpreted to ensure uniformity in commercial transactions counsels against applying the presumption, particularly in the backdrop of decisions holding that common law rules do not trump the mechanical application of statutes of limitations set forth under the UCC and that the common law presumption is inapplicable in the banking context.

The two decisions cited by the majority, *Flanagan v. Fidelity Bank*, 652 A.2d 930 (Pa. Super. Ct. 1995), and *Gilmore v. Alexander*, 112 A. 9, 11 (Pa. 1920), do not persuade me otherwise. Contrary to the majority's citation of *Flanagan* for "illumination," the Superior Court of Pennsylvania never addressed the applicability of the common law evidentiary presumption in its opinion, but rather focused on the trial court's valuation of the certificate of deposit. *Flanagan*, 652 A.2d at 931 & n.2 (noting that, although the court of common pleas determined that the presumption applied, that decision was not appealed). In *Gilmore*, an eighty-six-year-old decision that predated Pennsylvania's adoption of the UCC in 1953,[4] the Pennsylvania Supreme Court held that the common law evidentiary presumption applied to a "simple contract debt" requiring a garnishee to prove that an execution attachment filed more than twenty years prior to the suit had not been paid. 112 A. at 11. This decision does not relate to the UCC or reflect its policy considerations, and it does not persuade me that the UCC statute of limitations should give way to the common law evidentiary presumption.

Accordingly, for the reasons set forth above, I would conclude that the common law evidentiary presumption should not be applied in this case. As a result, I respectfully dissent.

---

[4]*See Keystone Bank v. Flooring Specialists, Inc.*, 518 A.2d 1179, 1185 n.7 (Pa. 1986) (noting that Pennsylvania became the first state to adopt the Uniform Commercial Code in 1953).

14