## McDowell, Appellant, v. North Side Bridge Co.

*Contracts—Bonds — Coupons — Corporations — Presumption of payment—Burden of proof—Rebuttal of presumption.*

1. The presumption of payment of a bond arising from the lapse of twenty years does not extinguish the debt but places on the plaintiff the burden to show by a prima facie case that the debt has not been paid.

2. Where an action against a corporation to recover the amount alleged to be due on interest coupons issued by the defendant, is not commenced until more than twenty years after their maturity, the fact that the coupons were in the possession of the payee and had not been surrendered to the defendant is admissible to rebut the presumption of payment, and is entitled to greater weight than it would be were the claim on an individual obligation.

3. In an action by a personal representative of a decedent against a corporation to recover the amount evidenced by interest coupons accompanying a bond issue of the defendant, where suit is brought twenty-eight years after the maturity, it was error for the court to

direct a verdict for the defendant on the ground that the presumption of payment had not been successfully rebutted, where the defendant company's books failed to show that the coupons had ever been redeemed, and plaintiff offered evidence that the coupons were outstanding and had never been in the possession of the company since issue, and explained the delay in making demand by the fact that decedent had intrusted the coupons to counsel, who died without having returned them, and that decedent passed into a state of mental decline and had forgotten where the coupons were, and they were only obtained by plaintiff by an examination of counsel's papers after his decease.

Argued Oct. 20, 1914. Appeal, No. 229, Oct. T., 1914, by plaintiff, from judgment of C. P. Allegheny Co., June T., 1913, No. 338, on directed verdict for defendant, in case of Lizzie Martin McDowell, Executrix of N. M. McDowell, Deceased, v. North Side Bridge Company, a corporation. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit to recover the amount of interest coupons. Before BROWN, J.

The facts appear by the opinion of the Supreme Court.

The court directed a verdict for the defendant, and subsequently entered judgment thereon. Plaintiff appealed.

*Error assigned* was in directing a verdict for defendant.

*James M. Clark,* for appellant, cited : Summerville v. Holliday, 1 Watts 507; Gregory v. Commonwealth, 121 Pa. 611; Winfield v. Beaver Trust Co., 229 Pa. 530; Second National Bank of Titusville v. Thompson, 44 Pa. Superior Ct. 200.

*William M. Robinson,* with him *George E. Shaw,* and *Reed, Smith, Shaw & Beal,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 2, 1915:

The plaintiff sues as the personal representative of N. M. McDowell, deceased, who, at the time of his death, was the holder of certain coupons issued by the defendant company 1st July, 1884, and which fell due 1st January, 1885. These coupons originally accompanied a certain bond issue of the company amounting to $250,000, and were obligations for the first installment of interest to accrue thereon. The action was for the recovery of the amount evidenced by the coupons, viz: $7,500.00. Twenty-eight years having elapsed between the maturity of the coupons and the bringing of the action, plaintiff was met at the threshold of her case with the legal presumption that the coupons had been paid, which presumption, except as successfully rebutted, was conclusive against her right to recover. The learned trial judge was of opinion that the evidence adduced was insufficient, and accordingly directed a verdict for the defendant. From the judgment entered thereon this appeal has been taken. The question raised has been sufficiently indicated in what we have said. In considering it we must have regard, first, to facts assumed, the plaintiff being entitled to the assumption, viz: that these coupons had been issued by the defendant company in accordance with law; that when issued, they were legally binding on the company, and that the plaintiff is a bona fide holder. The next fact, one appearing in the evidence, is, that the defendant company's books, so far as the company was able to produce them on the trial, under a rule, failed to show that these coupons have ever been redeemed. Still another matter to be considered is the effect of the evidence offered to explain why an earlier demand had not been made for payment of the coupons. When the purpose of the interest coupons is considered, and the legal incidents which attached to them, the fact that plaintiff is a bona fide holder of the coupons on which the present claim is based, is entitled to greater weight than it would be did the claim rest on an indi-

vidual obligation. In a case of the latter kind, Unangst v. Kraemer, 8 W. & S. 391, evidence of possession of the instrument by the payee was properly admitted because, in the language of ROGERS, J., "it was proof proper to be submitted to the jury to rebut the presumption of payment arising from lapse of time; for if the money was paid, why was not the bond given by Nicholas Kraemer to John King given up?" The fact that the payee is the holder of the obligation is a circumstance always to be considered when such questions as this arise. In some cases it may be of little significance, while in others it may materially lighten the burden resting on the plaintiff to overcome the adverse presumption. It is of varying force, depending on the general facts. In determining the weight to be allowed it, regard is to be had to the nature and character of the instrument or instruments about which the contention is raised. Here it was a series of interest coupons, 480 in number, differing in amount from $3.00 to $30.00, and aggregating a total of the first intallment of interest on $250,000 in bonds payable at thirty years; in the form issued, each was an acknowledgment that the sum mentioned therein was due to every person who should, for the time being, be the holder of it; each was therefore in its nature precisely analagous to a bank note payable to bearer, or to a bill of exchange endorsed in blank, and being an instrument therefore of the same description, it must be subject to the same rule of law that whoever is the holder of it has the power to give title to any person honestly acquiring it. County of Beaver v. Armstrong, 44 Pa. 63. In Knox County Commissioners v. Aspinwall, 62 U. S. 539, it is said, "A question was made upon the argument that the suit could not be maintained upon the coupons without a production of the bonds to which they had been annexed. And the answer is that these coupons or warrants for the interest were drawn and executed in a form and mode for the very purpose of separating them from the bond, and thereby dispensing with the necessity of its produc-

tion at the time of the accruing of each installment of interest, and at the same time to furnish complete evidence of the payment of interest." All this may be affirmed of the coupons in this case; they were payable to bearer, intended to pass by delivery the same as a bank note, and they were issued in a particular form so that they might furnish complete evidence of payment when they came into the hands of the obligor. Now, certainly, considering their legal incidents and the purpose in issuing them in the form adopted, the possession of them by the plaintiff, honestly acquired, especially when shown to have continued from the time they were issued until the bringing of the suit, is a circumstance calling for consideration when such an issue as this is presented, remembering that what is sought to be avoided is not a statute, but an artificial and arbitrary rule, which always yields before evidence satisfactory and convincing.

Now, as to the facts shown aside from that referred to. First, however, a word as to what the rule is and what is required. It does not extinguish the debt, for no mere rule could do that, but simply declares that when the creditor seeks to enforce an obligation that has been past due for twenty years, the burden shall be on him to show, by a prima facie case, that the debt has not been paid. Keeping in mind the requirements of the rule, and the purpose the defendant had in adopting the form of its coupon obligations, the significance of the plaintiff's offer of the books of the defendant company, produced on rule, becomes apparent. The coupons were outstanding; they had never been in possession of the company since they were issued, the books of the defendant company contain nothing to show that they were ever paid, or that the company's liability therefor had ever in any way been discharged. The witness who produced the books—ledger, minute book and cash book—was the secretary and treasurer of the defendant company. The cash book contained consecutive and continuous entries from 1st January, 1885, when the first entry was made,

up to the present time, and shows all receipts of coupons during that period. The witness testified that "from personal examination that I made of the book I have been unable to find any entry in connection with them (the coupons in suit) whatever, either that they were or that they were not paid." The other books produced were equally silent as to these coupons. Certainly the fact that the coupons, 480 in number, transferable on delivery, maturing at the same time, and in such form as to make the possession of them by the company conclusive evidence that they were paid, distinguishes the case from one where a creditor holds a single obligation of an individual debtor, in this at least, that while in the latter, the absence of any record of payment in the books of the debtor would be of slight significance, such absence from the books of the former, a corporation, might well be regarded, except as otherwise explained, an admission that the obligations outstanding remained unpaid. The gentleman who was treasurer of the company from 1884 for ten years following, testified that these coupons had not been paid during this period. Another witness who occupied the same position from 1907 to the present time testified that they were not paid during his term, at least to his knowledge. True, it does not follow from this that they might not have been paid between 1894 and 1897, but the evidence, if believed, shows that covering these years the coupons were lost to sight, that some years earlier McDowell had entrusted them for temporary purposes to his counsel, Mr. Schoyer, who later on died without having returned them, that McDowell had passed into a state of mental decline and had forgotten where the coupons were, and that it was not until an examination was made of Mr. Schoyer's private papers by his executor that the coupons were recovered. This evidence, if believed, not only tends to explain the delay in bringing the action for the recovery of the bonds, but, taken in consideration with what we regard as an admission derived from the defendant's books, was suffi-

cient to establish a prima facie case for the plaintiff; and since it rested partly on parol testimony, the question should have been submitted to the jury under proper instructions. Significant as the evidence introduced by the defendant as to McDowell's testimony in another suit, with respect to his right to payment on these coupons, may be, when the actual indebtedness of the company thereon is the issue, certainly it in no way impairs the prima facie case of the plaintiff in the issue of presumption of payment.

The assignment of error is sustained; the judgment is reversed with a venire facias de novo.