Marlene Fait SCHMALZ, Appellant,

v.

MANUFACTURERS & TRADERS
TRUST COMPANY d/b/a M
& T Bank, Appellee.

Superior Court of Pennsylvania.

Argued March 12, 2013.
Filed March 12, 2013.

Kristopher J. Januzzi, Shavertown, for appellant.

Mark D. Bradshaw, Harrisburg, for appellee.

BEFORE: BOWES, OLSON, and WECHT, JJ.

OPINION BY BOWES, J.:

Marlene Fait Schmalz appeals from the judgment entered in favor of Manufacturers & Traders Trust Company ("M & T Bank") following a non-jury trial. Upon review, we affirm.

The dispute in this matter centers on whether a certificate of deposit ("CD"), purchased from First Federal Savings Loan Association of Wilkes Barre, Pennsylvania ("First Federal") on March 3, 1970, was redeemed. The CD was in the names of Mrs. Mildred Fait, Appellant's mother, and Appellant, and was in the amount of $12,000.[1] First Federal later merged with another bank, which was subsequently acquired by M & T Bank. Appel-

---

1. As of July 28, 2011, the value of the CD was calculated as $141,143.

lant and her mother sought to redeem the CD on August 29, 2003, but M & T Bank refused. Mildred Fait passed away at the age of ninety-nine in June 2008. Thereafter, Appellant filed a writ of summons on July 30, 2009, followed by a complaint filed on September 23, 2009. The complaint set forth four separate counts, but the matter proceeded to a non-jury trial solely on the count relative to M & T Bank's failure to pay upon demand.

Prior to trial, M & T Bank filed a motion *in limine* seeking to preclude statements from Appellant's mother, Mildred Fait. Specifically, M & T Bank contended that any purported conversations in which Mildred Fait allegedly stated that she did not redeem the CD were inadmissible hearsay. Appellant did not respond to the motion with a filing, but the trial court permitted Appellant to reply orally before trial. According to Appellant, the statements were not hearsay because they were not being introduced to establish the truth of whether the CD was redeemed or, alternatively, the statements were admissible as a state of mind exception to the hearsay rule.[2] The trial court permitted the testimony subject to a continuing objection by M & T Bank and later determined that any such conversations were hearsay.

The evidence adduced at trial revealed that Appellant was in possession of the original CD, which was not stamped as surrendered or redeemed. M & T Bank had no paper or computer record of the CD. M & T Bank retains records relative to CD accounts for seven years. The funds from the CD had not escheated to the Commonwealth. A CD holder is required to receive an IRS 1099 form indicating yearly interest income and a maturity and renewal notice are sent to the

holder approximately three weeks before the CD is due. No IRS form 1099, maturity notice, or renewal notice was in the possession of Appellant, her mother's estate, or M & T Bank. Relying on the principle that a debt is presumed paid after twenty years, the trial court determined that Appellant failed to rebut this presumption and found in favor of M & T Bank. This appeal ensued.

Appellant raises two issues for our consideration.

1. Whether the trial court erred when it granted Bank's Motion in Limine when any statements by Marlene's deceased mother to the effect that the CD had not been paid are either (1) not impermissible hearsay or, (2) if found to be hearsay, are admissible as meeting the state of mind or excited utterance exceptions under Pa.R.E. 803(3).

2. Whether the trial court abused its discretion in entering judgment for Bank when the evidence was such to overcome Pennsylvania law providing that a debt is presumed paid after the lapse of twenty (20) years.

Appellant's brief at 3.

■ Appellant's first challenge is to the court's evidentiary ruling on M & T Bank's motion *in limine* declaring that statements made by Appellant's mother that she did not redeem the CD were inadmissible hearsay. We recently stated,

Generally, a trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the

---

**2.** Appellant also advanced a separate statutory argument under 42 Pa.C.S. § 5930, which is not raised on appeal. She also abandons

her contention that the evidence was non-hearsay.

framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Catlin v. Hamburg*, 56 A.3d 914, 922 (Pa.Super.2012).

■ Appellant argues that her mother's statements were admissible as a state of mind exception to the hearsay rule as well as an excited utterance. Insofar as Appellant neglected to raise the excited utterance argument before the trial court, the issue is waived. Pa.R.A.P. 302(a); *Commonwealth v. Mollett*, 5 A.3d 291, 311 (Pa.Super.2010). With respect to her argument pertaining to the state of mind hearsay exception, Appellant contends that her mother was extremely upset about M & T Bank's refusal to honor the CD and its representation that it had no record of the CD. She asserts that this testimony was circumstantial evidence that the CD was not redeemed and "indicative of [her mother's] state of mind that she was upset and worried constantly about the CD that Bank refused to honor." Appellant's brief at 10.

■ In addition, Appellant alleges that evidence that her mother said she purchased the CD as an investment for a rainy day and did not need to redeem the CD until later in her life is analogous to the situation presented in *Hooker v. State Farm Fire & Casualty Company*, 880 A.2d 70 (Pa.Cmwlth.2005). In *Hooker*, a homeowner testified that she did not complete home repair work because she was told by a contractor that the repairs would be temporary. The Commonwealth Court determined the out-of-court statement by the contractor was not hearsay, but if it were, it could be admissible under the state of mind exception.[3]

M & T Bank replies that Appellant did not introduce evidence of her mother's statements for any other purpose than to establish that the CD was not paid. Thus, it submits, the evidence was classic hearsay. Furthermore, it maintains that the trial court alternatively held that, even assuming the evidence was admissible, Appellant still failed to carry her burden. Hence, any perceived error in not considering the evidence was harmless.

The state of mind hearsay exception is set forth pursuant to Pa.R.E. 803(3). The rule reads:

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

(3) **Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of

---

3. The declarant in *Hooker* was the contractor. The Commonwealth Court, nonetheless, held that the statement was admissible to show Hooker's, the listener's, then existing state of mind. However, where the statement is being offered to show its effect on a listener, it is not being offered for the truth of the matter and is non-hearsay. *See Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656, 666 (1986) ("an out-of-court statement offered to explain a course of conduct is not hearsay."); *Commonwealth v. Smith*, 523 Pa. 577, 568 A.2d 600, 609 (1989); *Gunter v. Constitution State Service Co.*, 432 Pa.Super. 295, 638 A.2d 233, 235 (1994); *Commonwealth v. Blough*, 369 Pa.Super. 230, 535 A.2d 134, 138 n. 11 (1987) (citing McCormick, Evidence § 249, which provides that statements introduced to show the effect on a listener are not hearsay).

mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health. A statement of memory or belief offered to prove the fact remembered or believed is included in this exception only if it relates to the execution, revocation, identification, or terms of declarant's will.

Pa.R.E. 803(3).[4]

■ The exception, of course, is inapplicable if the statements are not being introduced for the truth of the matter asserted, as such statements are not hearsay.[5] However, where a statement is being introduced for the truth of the matter asserted, then it may be admissible if it is a declaration concerning "the declarant's then existing state of mind ... such as intent, plan, motive, design, mental feeling, pain, and bodily health." Pa.R.E. 803(3). Of course, the statement must be relevant to the issue in the case. *Commonwealth v. Laich*, 566 Pa. 19, 777 A.2d 1057, 1060–1061 (2001); *see also Commonwealth v. Moore*, 594 Pa. 619, 937 A.2d 1062, (2007) (Castille, J. concurring). The statement must be "instinctive, rather than deliber-

ate[.]" *Kemp v. Qualls*, 326 Pa.Super. 319, 473 A.2d 1369, 1373 n. 2 (1984). Moreover, a statement relating to past events based on memory or belief is not permissible to establish the truth of those events, absent relation to the execution, revocation, identification, or terms of the declarant's will. Pa.R.E. 803(3); *Commonwealth v. Levanduski*, 907 A.2d 3 (Pa.Super.2006) (*en banc*).

■ Traditionally, statements of the declarant's then existing state of mind are considered reliable based on their spontaneity. *Commonwealth v. Hess*, 378 Pa.Super. 221, 548 A.2d 582, 585 (1988) (citing Packel & Poulin, Pennsylvania Evidence, § 803(3)). There are ordinarily three instances in which the state of mind exception is applicable. First, the exception may apply to prove the declarant's state of mind when that state of mind is an issue directly related to a claim or defense in the case. *See Laich, supra.* Second, the exception can apply to demonstrate that a declarant did a particular act that was in conformity with his or her statement after having made the statement. *See Commonwealth v. Riggins*, 478 Pa. 222, 386

---

4. The Pennsylvania Supreme Court has promulgated new rules of evidence, which take effect on March 18, 2013. The rule changes result in no substantive change and are intended to conform the Pennsylvania rules, which reference the federal rules of evidence, with the stylistic changes made to the federal rules that became effective on December 1, 2011.

5. This is a frequent source of confusion, *see Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110, 126–131 (2001) (Saylor, J. concurring and dissenting); *Commonwealth v. Moore*, 594 Pa. 619, 937 A.2d 1062, 1071 n. 6 (2007), *id.* at 1079–1080 (Castille, J. concurring), perhaps stemming in part from decisional law prior to the codification of our rules of evidence that failed to distinguish between non-hearsay state of mind declarations and hearsay state of mind statements. A non-hearsay state of mind statement is most

frequently one that shows the declarant's state of mind circumstantially. *Commonwealth v. Hess*, 378 Pa.Super. 221, 548 A.2d 582, 585 (1988). For example, a person stating, "I am President Obama," would not offer the statement to prove that the individual is in fact President Obama, but it could be admissible to establish that the person's state of mind at the time of the statement was delusional. Such a declaration is classic non-hearsay. *See Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292, 1298 (1977) ("statements to others indicating an unsound mind may be received. The hearsay rule forms no objection to the statements to third parties since they are received without reference to the truth of the statement."). In contrast, if the same person said, "I am crazy," it may be admissible as to the truth of the statement under the state of mind hearsay exception.

A.2d 520, 526 (1978); *Ickes v. Ickes*, 237 Pa. 582, 85 A. 885, 887–888 (1912). Finally, an out of court statement related to the person's memory or belief is admissible in the limited instance where it relates to the "execution, revocation, identification or terms of the declarant's will." Pa.R.E. 803(3).

Appellant's mother's emotions over M & T Bank declining to redeem the CD is only relevant as circumstantial evidence of the truth of her belief that she had not redeemed the CD. This latter evidence is classic hearsay that does not fall within any exception. Phrased differently, we may consider as substantive evidence that Appellant's mother was upset based on her out-of-court statements; however, a court cannot utilize this statement as substantive evidence regarding whether the reason she was upset is truthful, *i.e.*, that she never redeemed the CD. Indeed, any statements by Appellant's mother regarding her memory or belief that are offered for the truth of that memory or belief are inadmissible under Rule 803(3), unless relating to her will. Thus, out-of-court statements by Appellant's mother as to why she was upset, *i.e.*, her belief that she did not redeem the CD, are statements regarding her memory of the past and not her then existing state of mind. Since Appellant's mother's anger over the bank's refusal is only relevant when considered in juxtaposition with the truth of her belief that she did not redeem the CD, the trial court did not err.

Appellant is seeking to rely specifically and substantively on the truth of why her mother was upset. Appellant's allusions to her mother's state of mind were merely "used as a conduit to support the admission of fact-bound evidence to be used for a substantive purpose." *Moore, supra* at 1073. Specifically, Appellant is seeking to backdoor into evidence the truth of her mother's belief that she had not redeemed the CD, which she cannot do.

■■■ Next, Appellant contends that the trial court abused its discretion in determining that she failed to overcome the presumption that the debt was paid.[6] Our Supreme Court explained the law regarding the presumption of whether a debt was paid and the corresponding burden of proof in *Rosenbaum v. Newhoff*, 396 Pa. 500, 152 A.2d 763 (1959). Therein, the Court stated:

> After the lapse of twenty years, all debts, including judgments, not within the orbit of the Statute of Limitations, are presumed[FN2] to have been paid. *Cope v. Humphreys*, 14 Serg. & R. 15 [ (1825) ]; *Foulk v. Brown*, 2 Watts 209 [ (1834) ]. *Until* the passage of twenty years it is the burden of the debtor to prove payment; *after* the passage of twenty years, it is the burden of the creditor to establish non-payment and for the satisfaction of such burden the evidence must be clear and convincing and must consist of proof other than the specialty itself; *In re Grenet's Estate*, 332 Pa. 111, 2 A.2d 707, *supra* [ (1939) ]; *Gilmore, to use* [sic] *v. Alexander*, 268 Pa. 415, 112 A. 9. 'The presumption is rebutted, or, to speak more accurately, does not arise where there is affirmative proof beyond that furnished by the specialty itself, that the debt has not been paid, or where there are circumstances that sufficiently account for the delay of the creditor'. *Reed v. Reed*, 46 Pa. 239, 242 [ (1863) ].

FN2. 'It is a presumption merely of fact, and amounts to nothing more than a rule of

---

6. We note that Appellant has failed to supply any case law in support of her position and cites only two cases that discuss general principles of law regarding the presumption of debt payments.

806 ■

evidence which reverses the ordinary burden of proof and makes it incumbent upon the creditor to prove, by preponderance of the evidence, that the debt was not actually paid;' *In re Grenet's Estate*, 332 Pa. 111, 113, 2 A.2d 707.[7]

■■■■■ If, during the twenty year period, the creditor has made an attempt *in good faith* to enforce the judgment by the institution of legal process; such action on the part of the creditor is sufficient to prevent the creation of the presumption of payment and the burden remains upon the debtor to affirmatively establish payment of the judgment. *James v. Jarrett*, 17 Pa. 370 [ (1851) ]; *Croskey v. Croskey*, 306 Pa. 423, 160 A. 103 [ (1932) ]; *Pennsylvania Co. v. Youngman*, 314 Pa. 277, 171 A. 594 [ (1934) ]; *Miller's Estate*, 243 Pa. 328, 90 A. 77 [ (1914) ]. As this Court stated in *James v. Jarrett*, 17 Pa. 372: 'The rule deducible from all of [the cases] whose authority is binding on us, is that where a party has a debt against another evidenced by a specialty or a record, and to which no statute of limitations applies, the burden of proving it unpaid is not thrown upon him who claims it, even in a suit brought more than twenty years after it has become payable, if within the twenty years a fair effort, though an unsuccessful one, has been made to recover it, by suing out legal process for that purpose.'

*Rosenbaum v. Newhoff*, 396 Pa. 500, 152 A.2d 763, 765–766 (1959)(emphasis in original) (footnote 3 omitted).

Prior to *Rosenbaum*, our Supreme Court also explained that

affirmative evidence may be direct or circumstantial (*Bank of Titusville v. Thompson*, 44 Pa.Super.Ct.200 [ (1910) ] ), but must make a *prima facie* case of nonpayment (*McDowell v. North Side Bridge Co.*, 247 Pa. 190, 93 Atl. 280 [ (1915) ] ), and [be] so convincing as to justify the conclusion that the debt is not in fact paid (*Eby v. Eby's Assignee*, 5 Pa. 435 [ (1846) ] ). In passing upon the sufficiency of the testimony to rebut the presumption of payment, the court must consider the united strength of all the evidence and circumstances, and each case depends largely on its own facts. The presumption of payment is strengthened by each year after the 20 (*Richards v. Walp*, 221 Pa. 412, 70 Atl. 815 [ (1908) ]; *Cannon v. Hileman*, 229 Pa. 414, 78 Atl. 932 [ (1911) ] ), so that after 30 years it can only be overcome by clear proof (*Peters's Appeal*, 106 Pa. 340 [ (1884) ]; *Miller v. Overseers of the Poor*, 17 Pa.Super.Ct. 159 [ (1901) ] ).

*Gilmore, supra* at 11.

More recently, in *Griffith v. Mellon Bank*, 328 F.Supp.2d 536 (E.D.Pa.2004), a federal district court applying Pennsylvania law agreed that the common law presumption applies to a CD, although it recognized that no reported case in Pennsylvania had so held.[8] The trial court

7. It appears that the Supreme Court's own decision in *Rosenbaum* articulates two separate burdens of proof. At one point, the Court indicates that the party must establish by clear and convincing evidence nonpayment, but in footnote two it opines that the burden is the lesser preponderance of the evidence standard. Appellant does not contest the trial court's application of the clear and convincing standard. Further, in *Gilmore v. Alexander*, 268 Pa. 415, 112 A. 9 (1920), the Supreme Court indicated that after thirty

years the creditor must overcome the presumption that the debt was paid by "clear proof[.]" *Id.* at 11.

8. In *Flanagan v. Fidelity Bank*, 438 Pa.Super. 516, 652 A.2d 930 (1995), this Court noted in a footnote that the trial court originally applied the presumption to a CD before determining that the CD was not twenty years old. This Court did not apply the presumption and the issue in *Flanagan* is not pertinent herein.

agreed with *Griffith*'s rationale and applied the presumption to the CD. Appellant apparently concedes the applicability of the presumption to a CD.

Appellant asserts that she herself testified that she had not redeemed the CD and had no knowledge that her mother redeemed the instrument. Appellant bootstraps her failed argument from above to argue that her mother's hearsay testimony "made it clear that [her mother] had never redeemed the CD." Appellant's brief at 14. According to Appellant, this evidence is strong direct evidence that the CD was not redeemed. Appellant continues that her production of the original CD, which was not stamped as redeemed, is "strong circumstantial evidence that payment was never issued." *Id.* at 15. Furthermore, she maintains that evidence that the money did not escheat to the Commonwealth supports her position. Finally, Appellant attempts to explain her and her mother's delay in enforcing the CD by submitting that the CD was for an emergency and was not needed until her mother's health began to fail.

M & T Bank responds that Appellant's evidence was meager circumstantial evidence and more supportive of its own position than Appellant's. It contends that Appellant's possession of the original CD, which was not marked as redeemed, "establishes nothing." M & T Bank's brief at 11 (citing *Rosenbaum, supra* at 766). Additionally, M & T Bank points out that much of Appellant's evidence was based on inadmissible hearsay. In addition, M & T Bank argues that evidence that the money did not escheat to the Commonwealth strongly supports its position that the money was paid to Appellant's mother. In this respect, it notes that if the account was inactive, the "bank would have had no choice but to escheat the money." M & T Bank's brief at 12.

M & T Bank also posits that Appellant's circumstantial evidence that there were no bank records indicating payment supports the view that the CD was paid. In leveling this aspect of its argument, M & T Bank sets forth that it is required to keep records for seven years after the closing of an account. M & T Bank's brief at 12 (citing 12 U.S.C. § 1829(b)(g); 7 P.S. § 108(a)). Since the bank had no records in 2003 regarding the account, it reasons that the CD was redeemed more than seven years before August 29, 2003. Lastly, M & T Bank asserts that Appellant failed to articulate, aside from her hearsay evidence, a cogent rationale for the lengthy delay in attempting to first redeem the CD and then file this underlying action.

The trial court determined that there was no direct evidence that Appellant's mother did not redeem the CD and that aside from Appellant's testimony that she did not redeem the CD, the evidence in this case was circumstantial. It opined that all of the evidence taken together did not "rise to the required level of 'clear and convincing.'" Trial Court Opinion, 9/22/11, at 6. In this respect, the trial court highlighted that Appellant's possession of the CD was insufficient and that she offered no satisfactory explanation for the delay in enforcing the debt.

We agree that Appellant did not offer sufficient evidence that clearly and convincingly established that the debt was not paid. Appellant's admissible evidence was that she herself had not redeemed the CD, she possessed the CD, which was not stamped as redeemed, and the bank had no record of payment or non-payment. The latter fact can be weighed in favor of either party, as set forth by M & T Bank. Moreover, the fact that no renewal notices or 1099's were produced can support the inference that the CD was redeemed.

That Appellant possessed the CD and had not redeemed it does little to prove that her mother did not redeem the CD, and any evidence that her mother did not redeem the CD was inadmissible hearsay. Finally, Appellant did not provide adequate evidence that explained her mother's or her delay in enforcing the debt, especially in light of their decision not to take legal action for six years after the bank declined to redeem the CD. For the aforementioned reasons, we affirm.

Judgment affirmed.